FILED BY _____ t

05 MAY 17 PM 4:

ROBERT R. DI TROLI
CLERK, U.S. DIST. C
W.D. OF TN, MEMPHI

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MARVIN L. RAINER,

      Plaintiff,

vs.

BRUCE WESTBROOKS, et al.,

      Defendants.

No. 04-2296-D/P

---

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ORDER OF DISMISSAL
ORDER DENYING APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

Plaintiff Marvin L. Rainer, Tennessee Department of
Correction ("TDOC") prisoner number 332114, an inmate at the West
Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, filed
a pro se complaint pursuant to 42 U.S.C. § 1983 on April 26, 2004
against former WTSP warden Bruce Westbrooks, Henry Steward, Scott
Wilson, Charles Gaskins, Phillip Glenn, Stan Paige, Officer Brown,
Vickie Kirby, Captain Lott, Michael Ottinger, Nadine Kiestler, Ross
Bates, and Bob Cabay. The Court issued an order on May 19, 2004
that, inter alia, directed the Clerk to issue process for, and the
marshal to effect service on, the defendants.[1] On March 11, 2005,
defendants Ottinger, Kiestler, Bates, Cabay, Steward, Wilson,

---

[1]    To date, defendants Westbrooks, Brown, and Lott have not been served.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 5-18-05



Gaskin, Glenn, Paige, and Kirby filed a motion for summary judgment, supported by a legal memorandum, a statement of undisputed facts, and certain documents. On March 30, 2005, plaintiff filed a response in opposition to that motion, supported by his factual declaration.[2] Plaintiff also filed a motion seeking appointment of counsel on March 1, 2005. As this case is being dismissed, the motion for appointment of counsel is DENIED.

As a preliminary matter, plaintiff testified at his deposition that he wished to dismiss his claims against defendants Steward, Gaskins, and Bates. Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed Mar. 11, 2005 ("D. 03/11/05 Br."), at 1-2. The plaintiff has not responded to this aspect of the defendants' motion, which is supported by excerpts from the plaintiff's deposition. Accordingly, the Court DISMISSES the complaint, pursuant to Fed. R. Civ. P. 41(a)(2), with prejudice, with respect to defendants Steward, Gaskins, and Bates.[3]

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court explained:

---

[2]   Plaintiff also filed his own summary judgment motion on March 30, 2005, which the Court denied as untimely in a separate order. The declaration submitted by the plaintiff in support of his summary judgment motion will be considered, to the extent relevant, in connection with this motion.

[3]   A dismissal under Rule 41(a)(2) is without prejudice unless the dismissal order specifies otherwise. This case was pending for almost a year when the summary judgment motion was filed and the trial date is rapidly approaching. Under these circumstances, dismissal with prejudice is appropriate.

> In our view, the plain language of Rule 56(c) mandates
> the entry of summary judgment, after adequate time for
> discovery and upon motion, against a party who fails to
> make a showing sufficient to establish the existence of
> an element essential to that party's case, and on which
> that party will bear the burden of proof at trial. In
> such a situation, there can be "no genuine issue as to
> any material fact," since a complete failure of proof
> concerning an essential element of the nonmoving party's
> case necessarily renders all other facts immaterial. The
> moving party is "entitled to judgment as a matter of law"
> because the nonmoving party has failed to make a
> sufficient showing on an essential element of [his] case
> with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation
omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary
judgment is made and supported as provided in this rule, an adverse
party may not rest upon the mere allegations or denials of the
adverse party's pleading, but the adverse party's response, by
affidavits or as otherwise provided in this rule, must set forth
specific facts showing that there is a genuine issue for trial." In
considering a motion for summary judgment, "the evidence as well as
the inferences drawn therefrom must be read in the light most
favorable to the party opposing the motion." Kochins v. Linden-
Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587-88 (1986) (same).[4]

---

[4]    Rule 56(e) sets forth in detail the evidentiary requirements
applicable to a summary judgment motion:

> Supporting and opposing affidavits shall be made on personal
> (continued...)

3

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

---

[4]      (...continued)
knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

In this case, the facts appear to be as follows:[5]

1.   Defendant Scott Wilson is an employee of the TDOC and is a Lieutenant at the WTSP. (Affidavit of Scott Wilson, sworn to on Mar. 8, 2005 ("Wilson Aff."), ¶ 1.)[6]

2.   On January 31, 2003, Officer Mike Brown[7] and Lieutenant Wilson entered the inmate Marvin Rainer's cell at WTSP to perform a search for security purposes. Inmate Rainer was told he would be strip searched, and he put his hand in his pocket and then dropped an object behind his bed. During the cell search, two bags of a white, rocky substance and a cell phone were found. (Wilson Aff., ¶ 2.)[8]

3.   Inmate Rainer and his cellmate were charged with disciplinary offenses of possession of drugs and

_____

[5]   The Court has deviated from the statement of undisputed facts submitted by the defendants because it fails to include all relevant factual matters, it is not presented in chronological order, and it presents as undisputed matters that plainly are not.

Moreover, the Court's task is complicated by plaintiff's failure to comply with Local Rule 7.2(d)(3), which provides that "the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue." Nonetheless, the Court has attempted, by examining the text of the plaintiff's response and the documents submitted with the complaint, to discern the extent to which plaintiff is able to dispute the proposed factual findings submitted by defendants.

[6]   The Wilson Affidavit is Exhibit 1 to the Notice of Filing, which was submitted by the defendants on March 11, 2005.

[7]   Brown was named as a defendant in this action, but service has not been effected on him.

[8]   Defendant Wilson states in his affidavit that, after plaintiff dropped the object behind his bed, "I immediately retrieved the item which was a bag of white rocky substance. During the cell search, another bag of the substance and a cell phone were found." Wilson Aff., ¶ 2. The plaintiff's version of events is somewhat different. In the declaration he submitted in opposition to the motion for summary judgment, which was executed in accordance with 28 U.S.C. § 1746, plaintiff states that he was using the cell phone when his cellmate said there was an officer at the door, at which time he put the cell phone in his pocket and later took it out and dropped it under the bed. Declaration of Marvin Rainer ("Rainer Opposition Decl."), filed Mar. 30, 2003, at ¶ 4. Plaintiff also states that defendant Wilson's affidavit does not correctly list his cell assignment at the time of the incident in question. Id.

contraband, the cell phone. (Wilson Aff., ¶ 3.) According to the documents attached to the plaintiff's complaint, plaintiff's cellmate was Reginald Brown, TDOC number 119895. Brown was in the cell with plaintiff during the search that gave rise to this lawsuit. The disciplinary charge issued to the plaintiff concerning the drugs is referred to in the documentation as number 00518156. The contraband charge is number 00518144. Plaintiff apparently entered a guilty plea to the contraband charge, which was not the subject of any disciplinary hearing. Rainer Opposition Decl., ¶ 5.

    4.   The white rocky substance was tested by the Tennessee Bureau of Investigation lab and found to be cocaine. (Wilson Aff., ¶ 4.)

    5.   Defendant Vickie Kirby is a Correctional Sergeant at WTSP in Henning, Tennessee. (Affidavit of Vickie Kirby, sworn to on Mar. 8, 2005 ("Kirby Aff.", ¶ 1.))[9]

    6.   On or about February 4, 2003, the first disciplinary hearing was held for inmate Marvin Rainer's disciplinary offenses of possession of drugs and contraband.[10] Vickie Kirby was the disciplinary board chairman, and the staff board members were Nadine Kiestler and Stan Paige. The reporting official, Lieutenant Scott Wilson, testified that he saw inmate Rainer put his hand in his pocket and throw something behind the bed. Lt. Wilson further stated that he retrieved what appeared to be cocaine from behind the bed where inmate Rainer had thrown it. After being tested,

---

[9]    A copy of the Kirby Affidavit is attached as Exhibit 2 to the Notice of Filing.

[10]    The date of the hearing may be disputed, although that dispute is not material. Kirby's affidavit states that the first hearing occurred on February 14, 2003. Kirby Aff., ¶ 2. Plaintiff uses the date of February 4, 2003 in his submissions, see Declaration in Support of Motion for Partial Summary Judgment, filed Mar. 30, 2005 ("Rainer Partial S.J. Decl."), ¶ 4, and that date is corroborated by the documents attached to the complaint, including the grounds raised in support of plaintiff's appeal of that disciplinary conviction to the warden.

the substance was shown to be cocaine. (See Kirby Aff., ¶ 2; Wilson Aff., ¶ 5.)[11]

    7.    The disciplinary board convicted Rainer of the drug offense on February 4, 2003. The record does not disclose the punishment imposed for that offense,

---

[11]    The submissions of the parties concerning this first disciplinary hearing are not very illuminating. Defendant Kirby also states, in connection with the February 4, 2003 hearing, that "[a]ll of the evidence was heard on the case." Id. The plaintiff plainly disputes that assertion, although his precise position is difficult to ascertain.

    The plaintiff's declaration submitted in response to the summary judgment motion emphasized that the defendants continued to pursue charges against the plaintiff although the charges against Reginald Brown, the plaintiff's cellmate, "were dismissed" prior to the plaintiff's disciplinary hearing,. Rainer Opposition Decl., ¶ 5. To the extent the plaintiff is inferring that the defendants voluntarily abandoned the charges against Brown in favor of pursuing charges against the plaintiff, that position does not appear to be supported by the documents submitted with the complaint, which indicate that Brown was exonerated following a disciplinary hearing that was held prior to the plaintiff's hearing. Thus, plaintiff's statement of grounds in support of his appeal to the warden stated, inter alia, as follows:

> [A]t the Disciplinary Hearing, both the appellant and Resident Reginald Brown #119895 plead not guilty, Resident Reginald Brown #119895 was exonerated of the disciplinary infraction—which means "the evidence presented at the disciplinary hearing was believable," whereas the same plea was entered by the appellant—who had the same evidence presented for and against him—was believable, yet it was used and applied arbitrarily to convict the appellant[.]

The record does not disclose whether the same disciplinary panel heard the charges against plaintiff and Brown. The declaration plaintiff submitted in opposition to the summary judgment motion suggests that plaintiff did not seek to call his cellmate as a witness until the second disciplinary hearing. See Rainer Opposition Decl., ¶ 5.

    In the declaration submitted in support of his motion for partial summary judgment, by contrast, the plaintiff takes a different position, asserting that defendant Kirby refused his request to call his cellmate as a witness at the first disciplinary hearing, Declaration in Support of Plaintiff's Motion for Partial Summary Judgment, submitted Mar. 30, 2005 ("Rainer Partial S.J. Decl."), ¶¶ 4-6, because he had been returned to the general population following his disciplinary hearing.

    The plaintiff also has taken inconsistent positions about whether Wilson testified at the February 4, 2003 hearing or whether the disciplinary board relied on his written report. In a declaration, the plaintiff stated that "[t]he evidence at the hearing consisted solely of the written reports of the two defendants [sic] officers and my testimony." Rainer Partial S.J. Decl., ¶ 7. In his statement of grounds for appeal to the warden from that conviction, however, he stated: "On 2-4-03 we had a hearing on the disciplinary offenses[.] I pleaded not guilty. Lt. Wilson was call[ed] into the hearing and he stated what happen[ed]."

although the complaint asserts that restrictions were imposed on visitation and packages. Plaintiff's appeal to the warden was denied on February 13, 2003. The TDOC reversed the drug conviction and remanded for a new hearing before a new panel. (See Wilson Aff., ¶ 5; Kirby Aff., ¶ 4.)[12]

8.    On or about March 13, 2003, a new disciplinary board was convened to re-hear the drug charge, disciplinary no. 518156. Defendant Kirby was the chairman of the panel, and the staff board members were Stan Paige and Nadine Kiestler. The report hearing summary, a copy of which is attached to the complaint, indicate that the plaintiff signed a waiver of his right to call witnesses at this hearing. The plaintiff was convicted on the basis of the testimony of defendant Wilson, and he was sentenced to the punishment that was imposed by the previous board, consisting of two days punitive segregation (which had already been served), a suspension of his visitation privileges, restrictions on his ability to receive packages, and drug testing. Any documents concerning plaintiff's appeal to the warden are not part of the record before the Court. The TDOC Commissioner reversed on or about April 25, 2003, stating as follows:

> The case is dismissed because the Remand Order issued on 3/4/03 was not adhered to. Order stated that the case at the Remanded Hearing was to be heard by a disciplinary board consisting of new members. This did not occur, as TOMIS LIBL Option 1 and the Hearing Summary for the remanded hearing will attest to. Same members heard the case.[13]

---

[12]    Wilson and Kirby state in their affidavits that the drug conviction was overturned "on a technicality," but the Court is unable to accept that characterization in the absence of some indication of the nature of the "technicality." The plaintiff's declaration also does not clearly state the reason why his original disciplinary conviction on the drug charge was overturned. See Rainer Opposition Decl., ¶ 5. That information is also not set forth in the documents attached to the complaint.

[13]    Although Commissioner White's memorandum is dated March 25, 2003, the plaintiff's appeal was dated April 15, 2003 and the Commissioner signed the form and dated it April 25, 2003 but referred to the attachment as the basis for his decision. It appears likely, therefore, that the date of the Commissioner's decision was April 25, 2003.

It also appears that the description of the remand hearing as set
(continued...)

9.   In the meantime, defendant Michael Ottinger, who works in the internal affairs section at the WTSP, conducted an internal investigation that resulted in the issuance of a new disciplinary charge on February 11, 2004, alleging a violation of state law, relating to the January 31, 2003 incident. That write-up is numbered 00519198. The record before the Court does not include the documentation for the first hearing on that charge, but it appears that the TDOC remanded the matter for a new hearing on March 16, 2003 for unspecified reasons. The re-hearing occurred on March 31, 2003. Defendant Kirby was the chairman of the panel, and the staff board members were Phillip Glenn and Bob Cabay. Defendant Ottinger provided confidential information to the board concerning the results of his investigation, and Reginald Brown testified on plaintiff's behalf that the drugs must have been planted by another inmate who had been with Brown in the cell while the plaintiff was at visitation and plaintiff had no knowledge of them. The board convicted the plaintiff on the basis of the confidential information presented by Ottinger. Plaintiff appealed to the warden, who affirmed the board on April 14, 2003. He appealed to the TDOC Commissioner, who ordered that the charges be dismissed on May 5, 2003. The record does not reflect the reason for the Commissioner's decision, although the plaintiff's statement in support of his appeal suggests that the reason for the dismissal was the fact that Kirby sat on the board that heard the charges for the second time.

10.   Any privileges taken from inmate Rainer due to the reversed conviction were returned to him after the case was dismissed. (Wilson Aff., ¶ 6; Kirby Aff., ¶ 5.)

11.   On March 20, 2003, Reginald Brown, TDOC number 119895, executed an affidavit that stated, in pertinent part, as follows:

---

[13]   (...continued)
forth in defendant Kirby's affidavit is substantially inaccurate. As will be explained infra, defendant Kirby has apparently conflated the remand hearing on disciplinary no. 518156 with the hearing in the second disciplinary charge issued to the plaintiff arising out of the same incident. The plaintiff's submissions make essentially the same error, as Reginald White did not testify at either hearing on disciplinary no. 518156, but he did testify at the disciplinary hearing for the subsequent write-up issued to the plaintiff for the same incident.

2.    On or about January 31, 2003, while
being housed in Unit 11A, 55 cell, at
approximately 9:30 p.m.—at WTSP—, myself and
resident Marvin Rainer, T.D.O.C. #332114 was
housed together in the above-mentioned
UNIT/POD/CELL, when we were ordered to submit
to a strip search by Lt. Scott Wilson. While
the searching officer (Lt. Wilson), was
preoccupied in searching resident MARVIN
RAINER #332114, I dropped two (2) bags of
Cocaine behind the bed, and I pretended to be
stationary/static. I have a drug use problem,
and I was going to support my habit. Because
Lt. Wilson had his mind set on convicting
resident MARVIN RAINER #332114, I was never
afforded an opportunity to confess to my
drugs. No one every (really) assumed I was
involved in having the drugs.[14]

12.    A criminal information was returned against
inmate Rainer in Lauderdale County, Tennessee as a result
of the incident. (Wilson Aff., ¶ 6.) Attached to the
complaint is a copy of a two-count indictment, dated June
2, 2003, charging plaintiff with possession of a Schedule
II controlled substance (cocaine/cocaine base) with
intent to deliver .5 grams or more, in violation of Tenn.
Code Ann. § 39-17-417, and possession of contraband in a
penal institution, in violation of Tenn. Code Ann. § 39-
16-201(a)(1).[15] Defendant Ottinger is listed as the
prosecutor on the indictment. Those charges are
apparently still pending.

13.    At the time of the incident in question,
plaintiff had apparently been approved for release on
parole. The plaintiff attached a document to the
complaint from the Tennessee Board of Probation and
Parole, entitled "Notice of Board Action," dated June 27,

---

[14]    It is not clear whether this affidavit was presented at the hearing
in disciplinary case no. 519198 on March 31, 2003. An examination of the
documents submitted with the complaint indicates that the substance of this
affidavit differs from the testimony offered by Brown at that hearing, where he
attributed the drugs to another inmate. The record does not disclose whether
Brown's affidavit was available to the disciplinary board on March 31, 2003. The
record also does not disclose whether Brown's affidavit, and his testimony on
March 31, 2003, differ from the position he took at his own disciplinary hearing
arising out of this incident. See supra p. 7 n.11.

[15]    The contraband charge referred to the drugs, not the cell phone.

2003, that checks a box marked "Recommend Past Release Date." Other boxes labeled "No Job Waiver" and "Substance Abuse Treatment at PO Discretion" are also checked. Plaintiff also submitted an inmate inquiry, dated June 4, 2003, asking why the reversed disciplinary convictions were still on his record. The response, dated June 17, 2003, stated that only the disciplinary for possession of contraband (the cell phone), disciplinary no. 518144, was on his record. Also attached to the complaint is a copy of a notice, entitled "Pre-Parole Rescission Hearing Notice," from the Tennessee Board of Probation and Parole, dated September 3, 2003, advising plaintiff that a hearing was scheduled on October 20, 2003. The notice stated, in part, that "[o]ne result of the pre-parole rescission hearing could be that a new parole grant hearing would be conducted at the conclusion of the pre-parole rescission hearing. The parole grant hearing may result in a decision to grant parole" (emphasis in original). The plaintiff states in a declaration that, as a result of the indictment, his parole date was rescinded. Rainer Partial S.J. Aff., § 25.

Before addressing plaintiff's claims arising out of the various disciplinary hearings, it is first necessary to address two preliminary aspects of the plaintiff's complaint. First, although not addressed in the defendants' motion, the law is clear that any claim plaintiff seeks to assert against defendant Ottinger, or any other defendant, arising out of the criminal prosecution in Lauderdale County is premature. Because the criminal proceedings have not been resolved in the plaintiff's favor, he may not obtain money damages for any alleged wrongdoing in connection with the filing of those charges. As the Supreme Court explained:

We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

11

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (footnotes omitted); Schilling v. White, 58 F.3d 1081, 1086 (6th Cir. 1995). Accordingly, the Court DISMISSES the complaint, to the extent it asserts claims arising out of the filing of state criminal charges, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted.

Second, plaintiff's claim arising out of the revocation of his parole is also subject to dismissal. To the extent plaintiff contends he was denied parole because of the disciplinary convictions that were dismissed by order of the TDOC Commissioner, the record indicates that those convictions were removed from the plaintiff's record and did not affect the decision of the parole board.

To the extent the plaintiff contends his parole was revoked because of the pending state criminal charges, the

complaint fails to state a claim on which relief may be granted and, therefore, is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). As defendants have pointed out, prisoners have no constitutional right to be released on parole before the expiration of their sentences. <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979). Moreover, Tennessee's statutory scheme places the decision to grant parole within the complete discretion of the parole board and, as a result, inmates have no state-created liberty interest in parole. <u>See</u> <u>Wright v. Trammell</u>, 810 F.2d 589 (6th Cir. 1987) (per curiam) (Tennessee law creates no liberty interest in parole).[16] Moreover, because the criminal charges have not been resolved in the plaintiff's favor, any claim he has for the collateral damages arising from those criminal charges, including the revocation of his parole, is premature.[17]

---

[16]     Tennessee courts have consistently interpreted Tennessee law as not creating a liberty interest in parole decisions. <u>See, e.g.</u>, <u>Pipher v. Tennessee Board of Parole</u>, No. M2000-01509-COA-R3-CV, 2002 WL 31443204, at *3 (Tenn. Ct. App. Nov. 1, 2002); <u>Kaylor v. Bradley</u>, 912 S.W.2d 728, 733 (Tenn. Ct. App. 1995); <u>Wells v. Tennessee Bd. of Paroles</u>, 909 S.W.2d 826 (1995).

        The Supreme Court's recent decision in <u>Wilkinson v. Dotson</u>, 125 S. Ct. 1242 (2005), which authorized § 1983 challenges to the procedures used in connection with denials of parole, is of no assistance to this plaintiff because the parole board and its members are not parties to this action. Instead, plaintiff sues only the WTSP officials involved with the cell search, the disciplinary investigations, and the internal affairs investigation and subsequent criminal charges. If the plaintiff were to prevail in this lawsuit, the Court could not direct that he be given a new parole hearing in which the criminal charges were not considered.

[17]     To the extent that plaintiff complains that criminal charges were filed against him and not against Reginald Brown, he has no claim under § 1983. <u>Linda R. S. v. Richard D.</u>, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of
(continued...)

With respect to plaintiff's claims arising from the alleged due process violations at his six disciplinary hearings, it is unclear, as a preliminary matter, just what plaintiff contends those due process violations consist of in light of the vague and inconsistent allegations in his various submissions.

Moreover, in light of the fact that the plaintiff's disciplinary convictions did not result in the loss of sentence credits or otherwise directly affect the length of this sentence, it does not appear that the plaintiff has a valid due process claim against he did not suffer a significant or atypical hardship.[18] As the Supreme Court explained in rejecting a due process challenge to a prison disciplinary conviction:

> Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. . . .
>
> . . . .
>
> . . . We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Sandin v. Conner, 515 U.S. 472, 484, 486 (1995). Thus, an inmate generally cannot maintain a due process claim based on his

---

[17]   (...continued)
another.").

[18]   In this case, the events of January 31, 2003 set in motion a chain of events that led to the filing of criminal charges against him and the recission of his parole. However, as previously noted, the dismissed disciplinary charges had no bearing on the decision of the parole board, so the effect on the defendant's sentence would appear to be unrelated to any due process deficiencies in the proceedings before the various disciplinary boards.

14

confinement in segregation, particularly where, as here, he suffered no loss of good-time credit. See Sarmiento v. Hemingway, 93 Fed. Appx. 65, 66 (6th Cir. Mar. 15, 2004) ("Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case."); Utley v. Campbell, 84 Fed. Appx. 627, 629 (6th Cir. Dec. 15, 2003) ("In order to state a claim of a denial of due process during a disciplinary hearing, Utley was required, and failed, to show that he had been subjected to an atypical and significant hardship."); Williams v. Wilkinson, 51 Fed. Appx. 553, 556-57 (6th Cir. Nov. 15, 2002), cert. denied, 539 U.S. 929 (2003); see also Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (administrative segregation); Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997); Bruggeman v. Paxton, No. 00-3917, 2001 WL 861678, at *1 (6th Cir. June 30, 2001).[19] In this case, even the plaintiff's submissions indicate he spent no more than forty-five (45) days in punitive segregation as a result of the disciplinary charges, Rainer Partial S.J. Decl., ¶ 16, and the complaint contains no allegations that

---

[19]     The Sixth Circuit's recent decision in Austin v. Wilkinson, 372 F.3d 346 (6th Cir.), cert. granted, 125 S. Ct. 686 (2004) (No. 04-495), is not to the contrary.  In Austin, the Sixth Circuit found that Ohio law created a liberty interest with respect to placement in a supermax facility. In so holding, the Sixth Circuit emphasized that the conditions of confinement in the supermax facility created a significant and atypical hardship within the meaning of Sandin. Id. at 353-55. That finding serves to distinguish the decision in Austin from the cases cited in the text.

the conditions suffered by inmates in punitive segregation "impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Conner, 515 U.S. at 484; see also id. at 487.

Even if that were not the case, due process requires only that some evidence be introduced in support of the decision of a disciplinary board. Superintendent, Massachusetts Correctional Instit., Walpole v. Hill, 472 U.S. 445, 455-57 (1985); Humphreys v. Hemingway, 77 Fed. Appx. 788 (6th Cir. Sept. 15, 2003). As the decisions of the disciplinary boards were supported by the testimony of defendants Wilson and Hill, the requirements of due process were satisfied.

For all the foregoing reasons, the Court GRANTS summary judgment in favor of defendants Ottinger, Bates, Cabay, Steward, Wilson, Gaskin, Glenn, Paige, and Kirby. The complaint is DISMISSED with respect to these defendants.

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. The same

16

considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith and he may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[20] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(b).

IT IS SO ORDERED this _17th_ day of May, 2005.

BERNICE B. DONALD
UNITED STATES DISTRICT JUDGE

---

[20]     Effective November 1, 2003, the fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 51 in
case 2:04-CV-02296 was distributed by fax, mail, or direct printing on
May 18, 2005 to the parties listed.

---

Arthur Crownover
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202--020

Marvin L. Rainer
W.T.S.P.
332114
P.O. Box 1150
Henning, TN 38041--115

Honorable Bernice Donald
US DISTRICT COURT